**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| COLUMBUS PRESSLEY, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 22-2262 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 9, 13, 14, 15 |
| | : | | |
| MANAGEMENT SUPPORT | : | | |
| TECHNOLOGY, INC. | : | | |
| | : | | |
| Defendant. | : | | |

### MEMORANDUM OPINION

**Denying Defendant's Motion to Dismiss Plaintiff's First Amended Complaint;
Denying Defendant's Motion to Strike Plaintiff's Second Amended Complaint;
Granting *Nunc Pro Tunc* Plaintiff's Motion for Leave to File a Second Amended
Complaint; and Granting in Part and Denying in Part Defendant's Motion to
Dismiss Plaintiff's Second Amended Complaint**

## I. INTRODUCTION

Plaintiff Columbus Pressley ("Plaintiff" or "Pressley") brings the instant action against

his former employer, Management Support Technology, Inc. ("Defendant" or "MSTI"), alleging

disability discrimination, failure to provide reasonable accommodations, and retaliation under the

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101; the D.C. Human Rights Act

("DCHRA"), D.C. Code §§ 2-1401.01 to 1404.04; the Family and Medical Leave Act

("FMLA"), 29 U.S.C. §§ 2601–54, and the D.C. Family and Medical Leave Act ("DCFMLA"),

D.C. Code §§ 32-501–17.  Since filing his original Complaint in August 2022, Pressley has filed

a First Amended Complaint and a Second Amended Complaint, which MSTI has moved to strike

and dismiss.  For the reasons explained below, the Court grants *nunc pro tunc* Plaintiff's motion

for leave to amend and deems Plaintiff's Second Amended Complaint to be the operative

complaint, while also denying MSTI's motion to strike.  As a result, MSTI's motion to dismiss

Plaintiff's First Amended Complaint is denied as moot.  The Court then grants in part and denies

in part MSTI's motion to dismiss Plaintiff's Second Amended Complaint.

## II.  BACKGROUND

### A.  Factual Background

In approximately October 2014, Pressley was diagnosed with bipolar disorder, post-

traumatic stress order ("PTSD"), high anxiety, severe obstructive sleep apnea, and chronic

insomnia.  Pl.'s Second Am. Compl. ("SAC") ¶ 9, ECF No. 14-1.  These conditions significantly

impair his ability to fall and stay asleep, which in turn affects his ability to function during the

day.  *See id.* ¶¶ 10–15.

In October 2018, Pressley began working for MSTI as an Asset Management Specialist,

which entailed "maintaining the asset inventory, updating the records in the database, conducting

research, and presenting reports."  *Id.* ¶¶ 8, 16.  In November 2018, Plaintiff submitted a request

to James Jordan, MSTI's Vice President of Human Resources, and Leslie Alexander, MSTI's

Federal Trade Commission ("FTC") Site Project Manager, seeking accommodations that

included a later start time to his workday, an extra break, and written instructions.  *Id.* ¶ 22.

Although Jordan told Pressley that he did not have any ADA-designated disabilities, and

Pressley's request for accommodations was never formally approved, Alexander permitted

Pressley to work a more flexible schedule.  *Id.* ¶¶ 23–25.  He "allowed Plaintiff to report to work

later, when necessary, and permitted him to work later in the evening to make up for starting

later."  *Id.* ¶ 25.  In March 2019, Pressley assumed the position of MSTI's Lead Asset Manager

Specialist and began implementing an enterprise resource planning tool called ServiceNow.  *Id.*

¶¶ 26–28.  Pressley was also tasked with training Aaron Smith, a new employee hired in July

2019.  *Id.* ¶ 29.

In approximately April or May 2019, MSTI replaced Alexander with Veronica Matthews. *Id.* ¶ 30.  Although Pressley told Matthews that his later report time was an accommodation for his disability, Matthews disciplined him for reporting to work late.  *Id.* ¶¶ 31, 33.  Between July 2019 and the date of his termination, Matthews suspended Pressley five or six times.  *Id.* ¶ 36. She also made negative comments to Pressley, such as saying, "You need to get a better alarm clock."  *Id.* ¶ 37.  In addition, she "subjected [him] to increased scrutiny by frequently reprimanding him for overtly inconsequential issues" and did not accommodate his requests that certain items be detailed and highlighted in writing.  *Id.* ¶¶ 39–40.

In October 2019, Pressley's physician submitted a request to Jordan that Pressley be granted reasonable accommodations and submitted a Form WH-380-E certification for FMLA/DCFMLA leave.  *Id.* ¶¶ 42–43.  Jordan confirmed receipt of the documentation, "but requested that edits be made to his certification forms."  *Id.* ¶ 44.  Pressley then emailed Jordan to re-submit his FMLA/DCFMLA certification requesting intermittent leave.  *Id*. ¶ 45.  On November 12, 2019, Jordan and Matthews told Pressley verbally that his FMLA/DCFMLA leave was approved, though Jordan stated again during this meeting that Pressley did not have an ADA-designated disability.  *Id.* ¶¶ 49–50.  On November 22, 2019, Pressley received a letter officially approving his FMLA/DCFMLA leave.  *Id.* ¶ 52.  Pressley utilized the approved FMLA leave to report to work later.  *Id.* ¶ 64.

Shortly after Pressley requested the FMLA/DCFMLA leave, Matthews rejected Pressley's request to attend a conference in November 2019 about ServiceNow.  *Id.* ¶¶ 53–54.  In denying his request, Matthews said that, "'based on [his] standing with MSTI,' she would not 'approve this event,'" and that the event did not directly relate to Pressley's role.  *Id.* ¶¶ 55–56. Moreover, in approximately mid-November 2019, Matthews informed Pressley that he was no

longer MSTI's Lead Asset Management Specialist, and the position and title were given to
Smith.  *Id.* ¶ 57.  Pressley was also excluded from decisions and meetings, including processes
related to ServiceNow, because Matthews would not invite Pressley and would hold the meetings
before Pressley arrived in the morning.  *Id.* ¶¶ 59–60.  During the last week of November 2019,
Matthews "instructed Plaintiff to sit at his desk unless he was asked questions, and not to send
any emails or make calls," and also "told him not to go to the Constitution Center location, even
though this was Plaintiff's additional work site."  *Id.* ¶ 61.  In December 2019, after Matthews
requested that Pressley submit a report regarding issues related to ServiceNow, Matthews held a
meeting regarding the report without inviting Pressley to that meeting.  *Id.* ¶ 62.

On December 13, 2019, Jordan terminated Pressley's employment with MSTI, alleging
violations of FTC security regulations and protocols for contract employees.  *Id.* ¶ 67.  Pressley
would take his FTC laptop and cell phone home at night to continue his work, but was "unaware
of any security policies relating to the use and handling of FTC IT equipment" and there had not
been "any presentation of such policies or guidelines."  *Id.* ¶¶ 65–66, 68.  Additionally, another
IT Asset Management Specialist, Alexander Barnwell, "engaged in similar conduct and was not
penalized."  *Id.* ¶ 70.  Barnwell did not have FTC approval to be on site, yet he removed FTC IT
equipment from a job site.  *Id.* ¶¶ 71–72.  The week after Pressley's termination, MSTI
Supervisor Brittany Cole circulated a policy regarding FTC-issued IT equipment and required
that all employees sign the policy.  *Id.* ¶ 74.  Finally, on December 17, 2019, Jordan called
Pressley's mother and told her that he had been terminated, stating "that federal authorities had a
warrant out for Plaintiff, insinuating that Plaintiff was a fugitive" and "that [Pressley's] medical
condition was affecting his behavior because he had stolen equipment from the FTC site."  *Id.* ¶
77.

## B.  Procedural Background

Pressley now seeks to raise various claims under the ADA, DCHRA, FMLA, and DCFMLA against MSTI.  Pressley initially filed his original Complaint in D.C. Superior Court on June 17, 2022, but MSTI removed the matter to this Court on August 1, 2022.  *See* Not. of Removal, ECF No. 1.  MSTI then filed a motion to dismiss on August 8, 2022, *see* Def.'s First Mot. to Dismiss, ECF No. 3, after which Pressley filed his First Amended Complaint on August 16, 2022, *see* Pl.'s First Am. Compl., ECF No. 7.  MSTI filed a second motion to dismiss on August 30, 2022.  *See* Def.'s Mot. to Dismiss Am. Compl., ECF No. 9.  Rather than filing an opposition to MSTI's second motion to dismiss, Pressley filed his Second Amended Complaint on September 13, 2022.  *See* SAC.  MSTI then filed a motion to strike the Second Amended Complaint because Pressley had not sought or obtained either MSTI's consent or the Court's leave to file the amended complaint.  *See* Def.'s Mot. to Strike SAC, ECF No. 13.  Three days after MSTI filed its motion to strike, Pressley belatedly sought leave to file the Second Amended Complaint.  *See* Mot. for Leave to File SAC, ECF No. 14.  Finally, MSTI filed a motion to dismiss the Second Amended Complaint.  *See* Def.'s Mot to Dismiss SAC ("Def.'s Mot. to Dismiss"), ECF No. 15.  The pending motions—MSTI's motion to dismiss Plaintiff's First Amended Complaint, Plaintiff's motion for leave to file the Second Amended Complaint, MSTI's motion to strike the Second Amended Complaint, and MSTI's motion to dismiss the Second Amended Complaint—have been briefed and are now ripe for consideration.

## III.  LEGAL STANDARDS

### A.  Motion to Amend Complaint

Pursuant to the Federal Rules of Civil Procedure, a party may amend its pleading once as a matter of course within 21 days after serving it, or, if the pleading is one to which a responsive

pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.  Fed. R. Civ. P. 15(a)(1).  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).

The decision to grant or deny leave to amend "is committed to a district court's discretion." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam).  Although leave to amend a complaint "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a)(2), "the Supreme Court has instructed federal courts to consider the following factors: (1) undue delay; (2) the movant's bad faith or dilatory motive; (3) repeated failures to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party by virtue of permitting an amendment; and (5) futility of the amendment," *Norris v. Salazar*, 746 F. Supp. 2d 1, 3 (D.D.C. 2010) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

The party opposing the amendment bears the burden of showing why leave should not be granted.  *Wright v. Corr. Corp. of Am.*, No. 1:00-CV-00293, 2016 WL 264907, at *2 (D.D.C. Jan. 21, 2016).  Because "Rule 15 does not prescribe a time limit in which a plaintiff may seek to amend a complaint," *Connecticut v. U.S. Dep't of the Interior*, 363 F. Supp. 3d 45, 55 (D.D.C. 2019), "'[c]onsideration of whether delay is undue . . . should generally take into account the actions of other parties and the possibility of any resulting prejudice,'" *id.* (quoting *Atchinson v. D.C.*, 73 F.3d 418, 426 (D.C. Cir. 1996)).  In determining whether "the threat of prejudice to the opposing party is great enough to warrant denying leave to amend, courts consider 'the hardship to the moving party if leave to amend is denied, the reasons for the moving party failing to include the material to be added in the original pleading, and the injustice resulting to the party

opposing the motion should it be granted.'" *Wright*, 2016 WL 264907, at *5 (quoting *Childers v. Mineta*, 205 F.R.D. 29, 32 (D.D.C. 2001)).

### B.  Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

To meet the requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  To survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).   In considering such a motion, a court must construe the complaint "liberally in the plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged." *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Further, a court need not accept a plaintiff's legal conclusions as true, *see id.*, nor presume the veracity of legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S. at 555.

### IV.  ANALYSIS

Pressley seeks to raise various claims under the ADA, DCHRA, FMLA, and DCFMLA against MSTI in his Second Amended Complaint, which he belatedly seeks leave to file.  In the interest of justice, the Court grants Pressley leave to file his Second Amended Complaint *nunc pro tunc* and accordingly denies MSTI's motion to strike the Second Amended Complaint and its

earlier motion to dismiss the First Amended Complaint.  The Court then turns to MSTI's motion to dismiss Pressley's Second Amended Complaint.  First, the Court dismisses Pressley's claims of ADA and DCHRA disability discrimination based on his allegations of suspensions, the denial of training opportunities, and exclusion from meetings and communications; his claims of such discrimination arising out of the change in his job title and responsibilities and his ultimate termination, however, survive.  Second, the Court denies MSTI's motion to dismiss Pressley's claims that it denied reasonable accommodations for his disabilities in violation of the ADA and DCHRA.  Third, the Court dismisses Pressley's claims of ADA and DCHRA retaliation based on his allegations of suspensions, the denial of training opportunities, and exclusion from meetings and communications; his claims of retaliation arising out of the change in his job title and responsibilities and his ultimate termination survive.  Finally, the Court denies MSTI's motion to dismiss Pressley's claims of FMLA and DCFMLA interference and retaliation.[1]

### A.  Motion to Amend Complaint

The Court recognizes that Pressley's procedural failures have complicated this matter unnecessarily, compelling MSTI to expend time and resources and file no fewer than three motions to dismiss and various other filings.  Nevertheless, the Court will in the interest of justice grant Pressley leave to file his Second Amended Complaint *nunc pro tunc*.  "Where 'the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he

---

[1] As an overarching observation, the Court notes MSTI's objections to Pressley's allegations that state that they are premised "upon information and belief."  *See, e.g.*, Def.'s Mot. to Dismiss at 5, 10.  But "[a]lleging facts 'upon information and belief' can be sufficient to survive a motion to dismiss."  *Bancroft Glob. Dev. v. United States*, 330 F. Supp. 3d 82, 102 (D.D.C. 2018); *see Evangelou v. District of Columbia*, 901 F. Supp. 2d 159, 170 (D.D.C. 2012) (permitting a plaintiff to plead facts upon information and belief "where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible" (citation omitted)).

ought to be afforded an opportunity to test his claim on the merits.'" *Pappas v. District of Columbia*, 513 F. Supp. 3d 64, 100 (D.D.C. 2021) (citation omitted); *see Foman v. Davis*, 371 U.S. 178, 181–82 (1962) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." (citation omitted)).

Importantly, MSTI has not made a sufficient showing that it has been prejudiced by Pressley's alleged untimeliness, given that this case is still "in its infancy." *Connecticut*, 363 F. Supp. 3d at 55; *see also Djourabchi v. Self*, 240 F.R.D. 5, 14 (D.D.C. 2006) (stating that amendment should be allowed where it does not "unduly increase discovery or delay the trial, and when the opponent could not claim surprise"). Pressley filed both of his amended complaints within one month, with the Second Amended Complaint filed within two months of the case's removal to this Court. And even though Plaintiff has added factual details and/or allegations, his claims remain the same and "arise from the same core set of events underlying the initial complaint." *Connecticut*, 363 F. Supp. 3d at 55. The additional expenses that MSTI incurred as a result of the Second Amended Complaint are now a sunk cost, and, in any case, additional expenses do not necessarily compel a finding of undue prejudice. *See City of Moundridge v. Exxon Mobil Corp.*, 250 F.R.D. 1, 6–7 (D.D.C. 2008) ("Inconvenience or additional cost to a defendant is not necessarily undue prejudice."); *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 301 F.R.D. 5, 9 (D.D.C. 2013) ("[A]n amendment is not automatically deemed prejudicial if it causes the non-movant to expend additional resources. Any amendment will require some expenditure of resources on the part of the non-moving party."); *Bronner v. Duggan*, 324 F.R.D. 285, 291 (D.D.C. 2018) (allowing amendment where defendants "[did] not offer evidence that the amended complaint would unduly prejudice their

legal strategy or their ability to present evidence").  The cases that MSTI cites emphasizing the

fault of the party seeking to amend, and deemphasizing prejudice to the nonmoving party, are

inapt here given the different postures of those cases.  *See Woods v. District of Columbia*, No.

20-cv-0782, 2022 WL 834144, at *1 (D.D.C. Mar. 21, 2022), *recons. denied*, No. 20-cv-0782,

2022 WL 17989326 (D.D.C. Dec. 29, 2022) (amended complaint following denial of motion for

reconsideration, which itself followed dismissal of the plaintiff's operative complaint); *Webster

v. Pacesetter, Inc.*, 270 F. Supp. 2d 9, 11 (D.D.C. 2003) (notice of appeal); *Wilson v. Prudential

Fin.*, 218 F.R.D. 1, 3 (D.D.C. 2003) (oppositions to defendants' motions).

Thus, the Court will treat the Second Amended Complaint as the operative complaint,

granting Pressley's motion for leave to amend and denying MSTI's motion to strike.[2]  The Court

also warns Pressley, however, that though the Court has accorded him this leeway here, he must

take greater care to ensure compliance with this Court's local rules and the Federal Rules of Civil

Procedure going forward.  Finally, given that the Court has granted leave *nunc pro tunc* for

Pressley to amend and deems his Second Amended Complaint to be the operative complaint,

Defendant's motion to dismiss the First Amended Complaint must be denied as moot.

## B.  ADA and DCHRA Claims

Due to the similarities between the ADA and DCHRA, the D.C. Court of Appeals has

stated that it would be appropriate to turn to ADA case law for guidance when interpreting the

---

[2] MSTI argues that the Court should grant its motion to strike as conceded, given that Pressley never filed an opposition to that specific motion.  *See* Def.'s Reply Supp. Mot. to Strike, ECF No. 18.  It would indeed have been within this Court's power to grant MSTI's motion to strike as conceded.  *See Summers v. Howard Univ.*, 127 F. Supp. 2d 27, 28 n.1 (D.D.C. 2000); *see* Local Civ. R. 7(b) ("If such a memorandum is not filed within the prescribed time, the Court *may* treat the motion as conceded." (emphasis added)).  The Court will decline to do so, however, because Pressley has opposed the substance of MSTI's motion to strike in responding to its opposition to his motion to amend.

DCHRA.  *See Hunt v. District of Columbia*, 66 A.3d 987, 990 (D.C. 2013) ("Our decisions under

the DCHRA regarding whether an employee was discriminated against because of a 'disability'

effectively incorporate judicial construction of related anti-discrimination provisions of the

[ADA].").  Thus, the Court does so here.  *See, e.g.*, *McKnight-Nero v. Walmart, Inc.*, No. 20-cv-

1541, 2021 WL 663315, at *4 n.2 (D.D.C. Feb. 19, 2021) ("[C]ases involving parallel provisions

of the ADA are persuasive in reviewing Plaintiff's DCHRA claims.").

### 1.  Disability Discrimination (Counts I and IV)

Pressley claims that MSTI discriminated against him in violation of the ADA and

DCHRA because it suspended him on multiple occasions, denied him training opportunities,

removed his leadership responsibilities, excluded him from key communications and meetings,

and ultimately terminated his employment based on his disabilities.  SAC ¶¶ 78–83, 94–98.

MSTI responds that Pressley has failed to allege that he suffered any adverse employment

actions, aside from the termination of his employment.  Def.'s Mot. to Dismiss at 8–14.  MSTI

then argues that, as to the termination, Pressley has not shown that he was removed from his

position because of his disabilities, given that he was instead terminated for violating FTC

security protocols.  *Id.* at 14–21.

The standards applicable to claims brought under the ADA also apply to Pressley's

DCHRA claims.  *See Hodges v. District of Columbia*, 959 F. Supp. 2d 148, 153 (D.D.C. 2013);

*McFadden v. Ballard Spahr Andrews & Ingersoll, LLP*, 611 F.3d 1, 5–6 (D.C. Cir. 2010); *Chang

v. Inst. for Pub.-Priv. P'ships, Inc.*, 846 A.2d 318, 324 (D.C. 2004) ("Because the DCHRA

definition of 'disability' closely resembles the definition of disability found in the [ADA] . . . we

have considered decisions construing the ADA as persuasive in our decisions construing

comparable sections of the DCHRA." (cleaned up)).  Thus, to establish a *prima facie* case of

discrimination under both the ADA and DCHRA, a plaintiff must show "that [he] was disabled within the meaning of the ADA, [he] was qualified for the position at issue with or without a reasonable accommodation, and [he] suffered an adverse employment action because of [his] disability." *Walden v. Patient-Centered Outcomes Rsch. Inst.*, 177 F. Supp. 3d 336, 341 (D.D.C. 2016) (citing *Giles v. Transit Emp. Fed. Credit Union*, 794 F.3d 1, 5 (D.C. Cir. 2015)).[3]

In the context of Title VII discrimination claims, the D.C. Circuit until recently defined "adverse employment action" such that, to find an adverse employment action, a court must "conclude that 'a reasonable trier of fact could find objectively tangible harm' based on 'materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities.'" *Black v. Guzman*, No. 22-cv-1873, 2023 WL 3055427, at *7 (D.D.C. Apr. 24, 2023) (quoting *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002)). After its decision in *Chambers v. District of Columbia*, 35 F.4th 870 (D.C. Cir. 2022) (en banc), however, "under Title VII, a plaintiff need not allege that she suffered an 'objectively tangible harm' in order to state a claim; rather, the statutory text requires only discrimination with respect to an employee's 'terms, conditions, or privileges of employment'—no more and no less." *Bain v. Off. of Att'y Gen.*, No. 21-cv-1751, 2022 WL 17904236, at *18 (D.D.C. Dec. 23, 2022) (citation omitted). Even so, the D.C. Circuit "acknowledge[d] that 'the phrase ['terms, conditions, or privileges of employment'] is not without limits' because 'not everything that

---

[3] MSTI does not contest that Pressley was disabled within the meaning of the ADA or that he was qualified for his positions with or without a reasonable accommodation. Instead, MSTI focuses its attention on the last requirement for making out a *prima facie* case of discrimination under the ADA and DCHRA: whether Pressley suffered an adverse employment action because of his disabilities. And indeed, "at the motion to dismiss stage a '[p]laintiff need only allege that he suffered an adverse employment action . . . because of [his] race, color, religion, sex, national origin . . . or disability.'" *Walden*, 177 F. Supp. 3d at 341 (quoting *Munro v. LaHood*, 839 F. Supp. 2d 354, 361 (D.D.C. 2012)) . The Court accordingly also concentrates on analyzing whether Pressley has raised a sufficient allegation of this last element.

happens at a workplace affects an employee's terms, conditions, or privileges of employment.'"
*Black*, 2023 WL 3055427, at *7 (quoting *Chambers*, 35 F.4th at 874) (cleaned up).  While "the
mere formality of a change in title" would not suffice as an adverse employment action, for
example, "the transfer of an employee to a new role, unit, or location . . . undoubtedly is
included."  *Chambers*, 35 F.4th at 874.

While the Circuit's ruling "appears to be limited by its terms to cases involving [job]
transfers," several courts "have determined that the *Chambers* opinion has broader application."
*McCallum v. Mayorkas*, No. 21-cv-1911, 2023 WL 3203011, at *9 n.9 (D.D.C. May 2, 2023).
In a comparable case, another court in this District reasoned that the interpretation of Title VII
set forth in *Chambers* should lead the court to "interpret the materially identical adverse action
provisions of [Title VII, the Age Discrimination in Employment Act, and the Rehabilitation Act]
to mean the same thing," such that it should no longer apply the "objectively tangible harm"
gloss.  *Bain*, 2022 WL 17904236, at *19.  Like the court in *Bain*, this Court concludes that it
would be appropriate to apply the D.C. Circuit's precedent in *Chambers* to the ADA, given that
courts have "applied Title VII principles in considering adverse employment actions under the
ADA."  *Blackwell v. SecTek, Inc.*, 61 F. Supp. 3d 149, 158 n.6 (D.D.C. 2014); *see also, e.g.*,
*Weigert v. Georgetown Univ.*, 120 F. Supp. 2d 1, 17 (D.D.C. 2000) ("Because the ADA
incorporates the procedures of Title VII, rulings in this area applying to adverse actions are
relevant [to evaluating adverse actions under the ADA].");  *Mogenhan v. Napolitano*, 613 F.3d
1162, 1165 (D.C. Cir. 2010) (stating that "Title VII of the Civil Rights Act . . . contains anti-
discrimination and retaliation provisions that are indistinguishable from those of the ADA").

### a. Adverse Employment Action

Before turning to the question of whether Pressley has raised plausible claims that he was discriminated against because of his disabilities, the Court considers first whether he has even alleged that he suffered adverse employment actions. Although the Court concludes here that MSTI's alleged actions suffice to constitute adverse employment actions so as to survive MSTI's motion to dismiss the ADA and DCHRA discrimination claims, the Court also recognizes that the parties have focused on the pre-*Chambers* objectively-tangible-harm requirement in arguing that Pressley failed to allege an adverse employment action. Looking ahead, the Court will permit MSTI to "remain[] free to press whatever alternative arguments it sees fit . . . at the summary judgment stage following discovery," including any arguments that, following additional fact development, it appears that these actions do not in fact meet the requirements for constituting adverse employment action post-*Chambers*. *Liu v. Georgetown Univ.*, No. 22-cv-157, 2022 WL 2452611, at *6 (D.D.C. July 6, 2022).

### i. Training

At this early motion to dismiss stage, the Court finds that Pressley has sufficiently alleged that the denial of the opportunity to attend a training constitutes an adverse employment action. First, the Court assumes that Pressley refers to Matthews' denial of his request to attend the ServiceNow conference when he claims that he was denied training opportunities. *See* SAC ¶¶ 53–56. Pressley does not set forth any argument for why such a denial ought to be considered an adverse employment action or how it affected the terms, conditions, or privileges of his employment. In a potentially comparable case, another court in this District considered whether a plaintiff's claim that she had been "pulled from" two "'work-related event[s],' described as a 'Miami event' and a 'Maryland business summit,' and replaced by a male coworker at the

Maryland event" sufficed as adverse employment action post-*Chambers*.  *Black*, 2023 WL

3055427, at *2.  Noting that the plaintiff had not "proffer[ed] supporting facts or allegations" as

to this claim, *id.* at *8, the court concluded that a plaintiff's allegation that she had been "'pulled

from' two work events in a two-month period over her lengthy employment . . . fail[ed] to satisfy

the *Chambers* standard" because the plaintiff did not "explain how this action affected any terms

or conditions of her employment in a manner any different than any regular re-assignment of

work among employees," *id.* at *7.  The plaintiff "[could not] avoid dismissal of her Title VII

discrimination claim by baldly stating that the alleged employment action adversely affected the

terms, conditions, or privileges of employment," the court stated, particularly once it considered

"the contextual information provided here that plaintiff's apparent reassignment from attending

two events occurred in a limited two-month period over an extensive work history, when her

own allegations suggest that her supervisors viewed her work productivity in the same period as

subpar." *Id.* at *7–8.

By contrast, a court in another analogous case concluded that a plaintiff "plausibly

alleged that [his employer's] denying him the opportunity to present the results of his research at

a professional conference constitute[d] the denial of one of the 'terms, conditions, or privileges

of [his] employment' for purposes of Title VII." *Liu*, 2022 WL 2452611, at *5.  Citing to the

plaintiff's allegation that the presentation would have served as a training opportunity, *id.*, the

court agreed that "the opportunity to present [one's] research results at professional

conferences—that is, to present and to take professional credit for one's own work—constitutes a

'privilege' of employment as an academic researcher," *id.* at *6.  Construing the complaint in the

light most favorable to the plaintiff and drawing all reasonable inferences in his favor, *id.*, the

court found that the plaintiff's complaint "contain[ed] sufficient allegations that the [c]ourt may

draw the reasonable inference that the opportunity to present the data and conclusions allegedly derived from [the plaintiff's] own work would have advanced his career as an academic researcher" and that his employer's denial of that opportunity sufficed as an adverse employment action, *id.* at *5.

Upon consideration of these two precedents, it appears to this Court that Pressley's claim that he was denied the opportunity to attend the ServiceNow conference falls closer to *Liu* than to *Black*. True, Pressley has not, in contrast to the plaintiff in *Liu*, explicitly articulated why attending the conference would have advanced his career. But the importance of Pressley's work with ServiceNow and the potential for advancement in his career by staying apprised of its developments is, upon construing his Second Amended Complaint in the light most favorable to him and drawing all reasonable inferences in his favor, fairly discernible from his allegations. *See* SAC ¶¶ 26–28, 62. "[A]t this early stage of the proceeding, [MSTI] bears the burden of showing that the complaint fails to state a plausible claim, and the Court cannot conclude that, as a matter of law, the loss of such an opportunity would inflict, at most, a 'trivial harm.'" *Liu*, 2022 WL 2452611, at *6 (citation omitted).

### ii. Meetings and Communications

Next, Pressley contends that being excluded from meetings and communications "undoubtedly had an impact on his employment" because "he was completely unaware of information when his co-workers would speak with him" and "was deprived of the information necessary to successfully perform his duties." Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") at 13, ECF No. 19. In his Second Amended Complaint, Pressley further alleges that he was told not to send any emails or make calls, nor to go to a work site, and was not invited to a meeting about a report that he had produced. SAC ¶¶ 61–62. As with his allegations of the

denial to attend the ServiceNow training, Pressley offers few details about the meetings, which prevents the Court from evaluating what effect his absence from those meetings may have had on his career.  Similarly, though Pressley states that Matthews directed him to not communicate with others or go to an additional work site, Pressley has not shown that he abided by those directions.  Even so, taking the allegations in his Second Amended Complaint as true, Pressley has sufficiently alleged for purposes of this motion to dismiss that his exclusion altered the terms of his employment because he could not communicate with his colleagues as he did before, which would presumably have affected his ability to fulfill his job responsibilities.  Because the Court again construes Pressley's Second Amended Complaint in the light most favorable to him and draws all reasonable inferences in his favor, the Court must conclude that Pressley has sufficiently alleged that these actions constitute adverse employment actions.  *See Heavans v. Dodaro*, No. 22-cv-836, 2022 WL 17904237, at *8 (D.D.C. Dec. 23, 2022) (finding that, because the plaintiff had attended certain meetings for years, the announcement that he would be excluded from those meetings "plainly effected a notable alteration to the terms of his employment, with a public demotion of his standing in [the] leadership team").

### iii.  Suspensions

Pressley does not specify in his Second Amended Complaint the length of his suspensions or claim that MSTI suspended him without pay, stating only that Matthews suspended him five to six times between July 2019 and his termination.  *See* SAC ¶ 36. Belatedly, he suggests in his opposition to MSTI's motion to dismiss that the suspensions "affected his pay" as "a natural consequence of a work suspension," and then cites to cases regarding suspensions without pay.  Pl.'s Opp'n at 13.  It remains unclear to the Court whether Pressley is alleging that he was in fact suspended without pay or suffered some lost wages as a

result of his suspensions.  Post-*Chambers*, it is clear that suspension without pay still qualifies as an adverse employment action.  *See Leach v. Yellen*, No. 18-cv-3075, 2023 WL 2496840, at *6 (D.D.C. Mar. 14, 2023) (describing a two-day unpaid suspension as "clearly" qualifying as adverse for Title VII discrimination purposes).  But it remains unclear whether a suspension with pay for a limited period of time—which, pre-*Chambers*, was unlikely to qualify as an adverse employment action, *see, e.g.*, *Brown v. Georgetown Univ. Hosp. Medstar Health*, 828 F. Supp. 2d 1, 9 (D.D.C. 2011) (collecting cases)—so qualifies as such an action now.

Given the generous application of *Chambers* by other courts in this District, however, this Court finds that Pressley's multiple suspensions, even if with pay, will qualify as an adverse employment action.  Consider as a point of comparison, for example, the scenarios in *Black*, which involved the suspension of the plaintiff's telework benefits such that she was forced to work in person instead of remotely, 2023 WL 3055427, at *8, or that in *Heavans*, in which the plaintiff's flexible work schedule was revoked, 2022 WL 17904237, at *8.  In both cases, the courts found that those actions were major changes to the conditions of their employment, such that they qualified as adverse employment actions.  *See Black*, 2023 WL 3055427, at *8; *Heavans*, 2022 WL 17904237 at *8.  Here, assuming the usual meaning of a suspension, Pressley was presumably told *not to come to work at all* five to six times for periods of unclear length.  His forced absence from work, his resulting inability to fulfill his job responsibilities, and the presumed effect on his standing within the company can be said to have affected the conditions of his employment, even if he was paid for that time.

### iv.  Removal of Leadership Responsibilities and Termination

Pressley's claim that MSTI "removed his leadership responsibilities"—presumably by replacing him with Smith as Lead Asset Management Specialist—presents a clear case of

adverse employment action.  SAC ¶¶ 80, 96.  He claims that, as a result of this change, he "no longer had leadership duties, he was no longer responsible for submitting period reports, and he had to report to Mr. Smith, who[m] Plaintiff had trained only a few months prior."  *Id.* ¶ 58. MSTI presents two objections in response: Pressley "did not allege he ever formally received this position or its duties and responsibilities, nor did he allege suffering any loss of pay or benefits, nor did he plausibly or at all allege any other 'tangible harm' resulting from this alleged removal of responsibilities."  Def.'s Mot. to Dismiss at 12.

Though Pressley has not alleged that he suffered any loss of pay or change in benefits due to the change in position, he has alleged not only that certain leadership responsibilities were taken from him, but also that another employee was placed above him in the chain of command. Although MSTI seeks to cast doubt as to whether Pressley functionally and in title even served as the Lead Asset Management Specialist, such that there was in fact a change in responsibilities and position, *see* Def.'s Mot. to Dismiss at 12 & n. 5, the Court must, at the motion to dismiss stage, treat Pressley's allegations as true, *see Harbour v. Univ. Club of Washington*, 610 F. Supp. 3d 123, 136 (D.D.C. 2022).  Pressley has provided scant details about what responsibilities and duties, precisely, were taken from him as a result of the change in position, but his claim that he was effectively demoted and had supervisory duties taken from him could nevertheless lead a reasonable juror to conclude that what happened to him constituted an adverse employment action.  *See Heavans*, 2022 WL 17904237, at *8 (explaining that an employer's action that "had the effect of 'remov[ing] the Plaintiff's management responsibilities on [a] project that he had led for the past four years'" qualified as an adverse employment action).[4]

---

[4] In one case, a court in this District stated that *Chambers* "controls only lateral transfer cases, as opposed to those involving effective demotions," but also observed that the plaintiff's loss of editorial and supervisory duties, such that he was "left with 'significantly different' and

And finally, Pressley's termination is, of course, an adverse employment action, whether considered under the pre- or post-*Chambers* standard. *See, e.g.*, *Douglas v. Donovan*, 559 F.3d 549, 554 (D.C. Cir. 2009) (describing termination as an "obvious" adverse employment action). MSTI does not contest that his termination ought to be considered such an action.

### b. Causation

Having concluded that each of the alleged actions taken by MSTI qualify as adverse employment actions, the pertinent question for this Court, then, is whether Pressley has sufficiently pled that MSTI took each of these actions "*because of* [Pressley's] disability." *Walden*, 177 F. Supp. 3d at 341 (emphasis added). Importing a standard from the Title VII context, MSTI submits that Pressley could only have raised an inference of discrimination if he has: (1) raised "[a]llegations sufficient to show that [he] was treated differently from other similarly situated employees who are not part of the protected class," and (2) shown "that [MSTI's] reason for the termination was false." Def.'s Mot. to Dismiss at 15 (citing *Redmon v. YMCA of Metro. Washington*, 417 F. Supp. 3d 99, 102 (D.D.C. 2019)). But while Title VII "mak[es] it unlawful for an employee's sex to be a 'motivating factor' in an employer's adverse action," such that a Title VII plaintiff "must prove only proximate causation," *Klotzbach-Piper v. Nat'l R.R. Passenger Corp.*, No. 18-cv-1702, 2021 WL 4033071, at *10 (D.D.C. Sept. 3, 2021), "[w]hich causation standard governs ADA claims—but-for or proximate causation—'remains an open question in this circuit,'" *id.* n.5 (quoting *Haughton v. District of Columbia*, 819 F. App'x 1, 2 (D.C. Cir. 2020)); *compare Conn v. Am. Nat'l Red Cross*, 149 F. Supp. 3d 136, 142 (D.D.C. 2016) (holding that the but-for standard applies and collecting court of appeals cases), *with*

---

'diminished' responsibilities," would have been "enough to show an adverse employment action even pre-*Chambers*." *Xie v. Chao*, No. 21-cv-1289, 2022 WL 3585669, at *4 n.3 (D.D.C. Aug. 22, 2022) (quoting *Czekalski v. Peters*, 475 F.3d 360, 364 (D.C. Cir. 2007)).

*Drasek v. Burwell*, 121 F. Supp. 3d 143, 154 (D.D.C. 2015) ("[A] discrimination or retaliation claim brought under the ADA can rest on a 'motivating factor' causation analysis . . . ."). Whereas the application of a "but-for" causation standard would require that Pressley show that MSTI "would not have fired him but for his . . . disability," such that "proof of mixed motives will not suffice," *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010), a "motivating factor" causation analysis would mean that a "claim can be sustained if discriminatory animus is merely one of several factors that precipitated the adverse employment action," *Drasek*, 121 F. Supp. 3d at 154.

Based on the current briefing, the Court cannot state with certainty that Pressley has failed to show the requisite causation under either of these two standards, whichever one properly applies. And at this stage, the Court "makes no judgment as to whether or not additional factual development will ultimately establish" either that MSTI would not have taken its actions against Pressley but for his disabilities or that his disabilities were a motivating factor in his termination. *Epps v. Potomac Elec. Power Co.*, 389 F. Supp. 3d 53, 68 (D.D.C. 2019), *on recons.*, No. 18-cv-1423, 2019 WL 7902976 (D.D.C. Sept. 20, 2019). The Court therefore reserves judgment on the issue of causation until the parties have briefed it, potentially at the summary judgment stage, and declines to grant MSTI's motion to dismiss Pressley's ADA and DCHRA discrimination claims on this basis.

### 2. Denial of Reasonable Accommodations (Counts II and V)

Next, Pressley claims that MSTI denied reasonable accommodations for his disabilities in violation of the ADA and DCHRA because MSTI never "formally approved" his request. SAC ¶¶ 84–87, 99–102. MSTI puts forward two responses: first, Pressley requested intermittent leave under the FMLA and DCFMLA, rather than reasonable accommodations under the ADA and

DCHRA; and second, the fact that MSTI did not formally approve Pressley's request for reasonable accommodations does not constitute a "denial," considering it continued to engage with Pressley's request and then granted him the accommodations once he sought them under the FMLA and DCFMLA.  Def.'s Mot. to Dismiss at 21–25.

Under the ADA, a covered employer is required to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability."  *Minter v. District of Columbia*, 809 F.3d 66, 69 (D.C. Cir. 2015) (citation omitted).  To state a claim for failure to accommodate, the plaintiff must demonstrate that "(1) he was a qualified individual with a disability; (2) his employer had notice of his disability; and (3) his employer denied his request for a reasonable accommodation."  *Badwal v. Bd. of Trs. of the Univ. of the Dist. of Columbia*, 139 F. Supp. 3d 295, 312 (D.D.C. 2015) (citing *Ward v. McDonald*, 762 F.3d 24, 31 (D.C. Cir. 2014)).[5]  "An underlying assumption of any reasonable accommodation claim is that the plaintiff-employee has requested an accommodation which the defendant-employer has denied."  *Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999).  "The request for accommodation does not have to be formal, and the words 'reasonable accommodation' do not have to be used, but the employer must be alerted to the condition and the need for accommodation."  *Andueza Croce v. Garland*, No. 21-cv-00264, 2021 WL 5206106, at *8 (D.D.C. Nov. 9, 2021) (quoting *Thompson v. Rice*, 422 F. Supp. 2d 158, 176 (D.D.C. 2006), *aff'd*, 305 F. App'x 665 (D.C. Cir. 2008)); *see also Murphy v. District of Columbia*, 590 F. Supp. 3d 175 (D.D.C. 2022) (stating that a request for an accommodation "does not have to be

---

[5] Here, again, MSTI does not appear to contest the first two elements—that Pressley was a qualified individual with a disability and that MSTI had notice of his disability.  Rather, MSTI's motion to dismiss concentrates on whether MSTI denied Pressley's request for reasonable accommodations.  Accordingly, the Court does the same.

in writing . . . or formally invoke the magic words 'reasonable accommodation,'" but must simply make it "clear that the employee wants assistance for his or her disability" (citations omitted).[6]  In determining an appropriate reasonable accommodation, there should be "'a flexible give-and-take' between employer and employee 'so that together they can determine what accommodation would enable the employee to continue working.'"  *Ward*, 762 F.3d at 32 (quoting *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir. 2005)).

Thus, to establish that his request for reasonable accommodations was denied by MSTI, Pressley must show that MSTI "either ended the interactive process or participated in it in bad faith." *Johnson v. District of Columbia*, 207 F. Supp. 3d 3, 14 (D.D.C. 2016) (citing *Ward*, 762 F.3d at 32).  Then, to show that MSTI failed to participate in this interactive process, he must show that: (1) "the employer knew about the employee's disability;" (2) "the employee requested accommodations or assistance for his or her disability;" (3) "the employer did not make a good faith effort to assist the employee in seeking accommodations;" and (4) "the employee could have been reasonably accommodated but for the employer's lack of good faith." *Floyd v. Lee*, 968 F. Supp. 2d 308, 327 (D.D.C. 2013) (citation omitted and emphasis removed).  "[N]either party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability," and a court should therefore "look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary." *Ward*, 762 F.3d at 32 (quoting *Sears*, 417 F.3d at 805).  "In short, 'courts should attempt to isolate the cause of the breakdown and then assign responsibility.'" *Johnson*, 207 F. Supp. 3d at 14 (quoting *Ward*, 762 F.3d at 32).

---

[6] The standards for a failure-to-accommodate claim are the same under both the ADA and Rehabilitation Act.

As Pressley points out, MSTI concentrates its arguments on his requests for intermittent leave under the FMLA and DCFMLA, and largely ignores that Pressley's reasonable accommodations claim is instead premised on the request that he made in November 2018 to Jordan and Alexander for a later start time, an extra break, and written directions—not for leave. *See* Pl.'s Opp'n at 15.   Pressley has raised plausible allegations that he made it clear to MSTI that he was seeking accommodations for his disabilities.  In turn, MSTI denies that it ended the interactive process or participated in the process in bad faith because "once Mr. Pressley formally pursued the process (albeit under the FMLA/DCFMLA umbrella), MSTI continued to engage with him in good faith and then granted the requested accommodations."  Def.'s Mot. to Dismiss at 25 (emphasis removed).  But MSTI's argument belies the fact that Pressley has also alleged that, once MSTI replaced Alexander with Matthews, Matthews stopped providing him with the accommodations that he had requested in November 2018 even though Pressley informed her that he had previously been provided those accommodations for his disabilities. The relevant fact alleged here is not whether MSTI engaged with Pressley and ultimately provided him with leave; it is whether MSTI continued to engage in an interactive process with Pressley about a later start time, an extra break, and written directions.  Pressley has raised plausible allegations that it did not do so—or, stated differently, that Matthews, and therefore MSTI, caused a breakdown of the interactive process and in effect denied Pressley's request for those reasonable accommodations.  Taking Pressley's factual allegations as true at this stage, he has raised a sufficient claim that survives MSTI's motion to dismiss.

### 3.  Retaliation for Protected Activity (Counts III and VI)

Next, Pressley alleges that, in violation of the ADA and DCHRA, MSTI retaliated against him for engaging in protected activity when he requested reasonable accommodations for his

disabilities in November 2018.[7]  SAC ¶¶ 88–93, 103–08.  As with his claims of discrimination,

Pressley bases his claims of retaliation on his suspensions, the denial of training opportunities,

MSTI's removal of his leadership responsibilities, his exclusion from key communications and

meetings, and his termination.  *Id.*  For its part, MSTI argues that Pressley has not shown any

causal connection between his requests for accommodations in November 2018 and the

aforementioned actions, in part because temporal proximity is lacking.  *See* Def.'s Mot. to

Dismiss at 26–29.  To state a prima facie case for retaliation under the ADA and the DCHRA, a

plaintiff must allege that: (1) he "engaged in protected activity," (2) he "was subjected to adverse

action by the defendant," and (3) "there is a causal connection between the adverse action and

the protected activity."  *Brown v. Trinity Washington Univ.*, No. 22-cv-1612, 2023 WL 2571729,

at *5 (D.D.C. Mar. 20, 2023) (citation omitted and cleaned up).[8]

### a.  Adverse Action

An adverse action for a retaliation claim is "one that 'could well dissuade a reasonable

[person] from making or supporting a charge of discrimination.'"  *Id.* (quoting *Porter v. Shah*,

606 F.3d 809, 817–18 (D.C. Cir. 2010)).  Although "[a]dverse employment actions include 'job

application procedures, the hiring, advancement, or discharge of employees, employee

compensation, job training, and other terms, conditions, and privileges of employment,'"  *Weigert*

---

[7] As MSTI emphasizes, Pressley does not make the argument that, because MSTI allegedly took certain actions following his request for leave under the FMLA and DCFMLA, those alleged actions could, in addition to potentially forming the basis for claims of reprisal under the FMLA and DCFMLA, also separately constitute retaliation for protected activity under the ADA and DCHRA.  *See* Def.'s Mot. to Dismiss at 25–26.  Because Pressley is represented by counsel and has had multiple opportunities to make such an alternative argument, yet does not do so, the Court limits its analysis to the narrower claim Pressley has actually and explicitly raised in his Second Amended Complaint.

[8] Here, again, MSTI does not contest that Pressley engaged in protected activity when he requested accommodations in November 2018, so the Court focuses its analysis on the latter two prongs of the test.

*v. Georgetown Univ.*, 120 F. Supp. 2d 1, 17 (D.D.C. 2000) (quoting 42 U.S.C. § 12112(a)),

"minor or trivial actions that make an employee unhappy are not sufficient to qualify as

retaliation under the ADA," *id.* (quoting *Silk v. City of Chicago*, 194 F.3d 788, 800 (7th Cir.

1999)).  "Because of [the distinction between what constitutes an adverse action for a retaliation

claim and an adverse employment action for a discrimination claim], 'the proscription against

retaliation sweeps more broadly than the proscription against discrimination.'"  *Evans v. District

of Columbia*, 754 F. Supp. 2d 30, 47 (D.D.C. 2010) (quoting *Gaujacq v. EDF, Inc.*, 601 F.3d

565, 577 (D.C. Cir. 2010));[9] *Richardson v. Powell*, No. 14-cv-1673, 2019 WL 1298021, at *11

(D.D.C. Mar. 21, 2019), *aff'd*, 798 F. App'x 662 (D.C. Cir. 2020) ("The standards for an

'adverse action' to prove discrimination and a 'materially adverse action' to prove retaliation

'are not [coterminous].'" (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67

(2006)).  Even after *Chambers*, "actionable retaliation claims 'are [still] limited to those where

an employer causes material adversity, not trivial harms[.]'"  *Black*, 2023 WL 3055427, at *7

(quoting *Wiley v. Glassman*, 511 F.3d 151, 161 (D.C. Cir. 2007)) (cleaned up).  As such, MSTI's

"arguments regarding the *de minimis* nature of some of [Pressley's] allegations have more force

in the retaliation context, where courts still look for 'objective' materiality in much the same way

that they used to require 'objectively tangible harm' in discrimination claims."  *Heavans*, 2022

WL 17904237, at *9 (citation omitted).

   Again, the changes in Pressley's job responsibilities and title and his ultimate termination

"are prototypical 'significant change[s] in employment status,' and as such provide solid

---

[9] Another court in this District has explained that, because "the ADA incorporates the
powers, remedies, and procedures of Title VII," "rulings in [the Title VII context] applying to
adverse actions are relevant" to retaliation claims made under the ADA.  *Weigert*, 120 F. Supp.
2d at 16–17 (citation omitted).

underpinning for [Pressley's] retaliation claim." *Id.* at *10 (quoting *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013)).  But Pressley's remaining claims—the denial of training opportunities, exclusion from communications and meetings, and suspensions—do not, even if they now qualify as adverse employment actions post-*Chambers*, necessarily qualify as materially adverse actions necessary to support a retaliation claim.  *See id.* at *10 (discussing why "the allegations of plaintiff's exclusion from management meetings and the transfer of an employee from under his supervision plausibly altered the conditions of his employment for the purposes of his discrimination claims," but nevertheless "cannot be said to be sufficiently significant to have dissuaded a reasonable employee from pursuing his discrimination claims").  The denial of Pressley's opportunity to attend the ServiceNow training and his exclusion from meetings and communications are non-actionable in his retaliation claim because he has alleged mere "[p]urely subjective injuries," as opposed to objective material adversity.  *Trinity Washington Univ.*, 2023 WL 2571729, at *5 (quoting *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006)); *see also Heavans*, 2022 WL 17904237, at *10; *Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009) (stating that "petty slights" and "alteration of job responsibilities" could not support retaliation claims).

Pressley's suspensions pose a trickier issue: despite multiple bites at the apple, Pressley still has not alleged in his Second Amended Complaint the length of each of his suspensions and whether he was suspended with or without pay, instead merely insinuating in subsequent briefing that he may have been suspended without pay.  Though this Court recognizes here that a suspension with pay may now constitute an adverse employment action under *Chambers*, it is not clear that such a suspension would be a materially adverse action sufficient to support a retaliation claim.  But even if the Court wanted to entertain the possibility that suspensions with

pay might have sufficed to constitute a materially adverse action for purposes of a retaliation claim, *see Teklehaimanot v. Park Ctr., Inc.*, 804 F. Supp. 2d 886, 912 (N.D. Ind. 2011) (stating that, for retaliation claim under Title VII, "[t]he plaintiffs may be able to show that their paid suspensions constitute adverse employment actions under the broader standard for adverse actions in retaliation actions"), it could not do so because Pressley has not met the minimum of first alleging any details about his suspensions to show that objective material adversity resulted such that a reasonable person would be dissuaded from making a charge of discrimination.  The Court has no basis for drawing such a conclusion based on Pressley's bare allegations of the suspensions.  Thus, the Court rejects Pressley's contention that his suspensions suffice to form the basis of his retaliation claim as well.

### b.  Causal Connection

Accordingly, the Court need only consider Pressley's claims of retaliation based on the change in his job role and his termination.  MSTI treats temporal proximity as a requirement for showing the necessary causal connection between the request for accommodations and the alleged adverse actions.  *See* Def.'s Mot. to Dismiss at 27 ("Mr. Pressley's allegations for all three of his claimed adverse employment actions fail the temporal proximity test."); *id.* at 28 ("[A]ssuming *arguendo* that [the alleged adverse actions] qualify they fall woefully short of the required temporal proximity.").  But "a causal connection between the protected activity and the adverse action is the essential element of a retaliation claim; temporal proximity is not." *Winston v. Clough*, 712 F. Supp. 2d 1, 11 (D.D.C. 2010).  That is, temporal proximity is a sufficient, but not necessary, condition for a retaliation claim: "[a] complaint's facts reflecting temporal proximity can be probative of a causal connection, but are not required in order to plead a retaliation claim." *Id.*; *see also, e.g.*, *Thomas v. Vilsack*, 718 F. Supp. 2d 106, 116 (D.D.C. 2010)

("While this Court has sometimes held that the retaliation must occur soon after the employee's protected activity, 'there is no hard-and-fast rule that any specified amount of time is too removed for an inference of causation.'" (citations omitted)).

At the motion to dismiss stage, a plaintiff "can satisfy his burden to plead a plausible claim of retaliation by providing facts showing that he engaged in a protected activity and suffered [a materially] adverse employment action, and alleging that he suffered the [materially] adverse employment action as a result of the protected activity." *Winston*, 712 F. Supp. 2d at 11 (collecting cases); *see also Bartlette v. Hyatt Regency*, 208 F. Supp. 3d 311, 323 (D.D.C. 2016) ("It is sufficient at [the motion to dismiss stage of the proceedings] for a plaintiff to plead causation 'simply by alleging that the adverse actions were caused by his protected activity.'" (quoting *Bryant v. Pepco*, 730 F. Supp. 2d 25, 32 (D.D.C. 2010)).   Pressley has done so, and as a result, his claims of retaliation based on the changes in his job role and his termination suffice to survive MSTI's motion to dismiss.  *See* SAC ¶¶ 90–91, 105–06.

### C.  FMLA and DCFMLA Claims (Counts VII, VIII, IX, and X)

Pressley further alleges interference and reprisal in violation of the FMLA and DCFMLA.  SAC ¶¶ 109–30.  "An employer may be held liable for violating the FMLA under two distinct claims: (1) interference, if the employer restrained, denied, or interfered with the employee's FMLA rights, and (2) retaliation, if the employer took adverse action against the employee because the employee took leave or otherwise engaged in activity protected by the Act."  *Holloway v. D.C. Gov't*, 9 F. Supp. 3d 1, 7 (D.D.C. 2013).  Meanwhile, "[t]he DCFMLA is the District of Columbia's analog to the FMLA."  *Murphy v. District of Columbia*, 390 F. Supp. 3d 59, 67 (D.D.C. 2019).

**1.  Statute of Limitations**

MSTI contends as an initial matter that Pressley's claims under the FMLA are time-barred by the statute of limitations of two years because he has not alleged sufficient facts to warrant application of a three-year statute of limitations that applies to willful violations of the FMLA.  Def.'s Mot. to Dismiss at 31–32.  Pressley was terminated on December 13, 2019.  SAC ¶ 67.  He filed charges in the D.C. Office of Human Rights ("OHR") on July 6, 2020, but OHR administratively dismissed the charges on March 4, 2022.  SAC ¶ 7.  Pressley then filed his original Complaint in D.C. Superior Court on June 17, 2022.  *See* Not. of Removal.  A plaintiff must bring a claim under the FMLA within two years of "the last event constituting the alleged violation" of the statute.  29 U.S.C. § 2617(c)(1).  Where "the complaint contains some express or implied allegation of willful conduct," however, the statute of limitations is extended to three years.  *Hodge v. United Airlines*, 666 F. Supp. 2d 14, 23 (D.D.C. 2009); *see also* 29 U.S.C. § 2617(c)(2) ("In the case of such action brought for a willful violation of section 2615 of this title, such action may be brought within 3 years of the date of the last event constituting the alleged violation for which such action is brought.").  "In the context of FMLA, willful conduct is generally viewed as an employer that knows its conduct to be wrong or has shown reckless disregard for the matter in light of the statute."  *Cooper v. Henderson*, 174 F. Supp. 3d 193, 205 (D.D.C. 2016)

At the motion to dismiss stage, "a plaintiff may withstand [a motion to dismiss based on the statute of limitations] merely by having alleged that the FMLA violation was willful."  *Ricco v. Potter*, 377 F.3d 599, 603 (6th Cir. 2004); *see also Hodge*, 666 F. Supp. 2d at 23 ("While Hodge does not use the magic word 'willful' in his complaint, his allegations of knowledge and intentionality are sufficient to indicate that he believes United's violation of the statute was

willful."); *Vick v. Brennan*, 172 F. Supp. 3d 285, 300 (D.D.C. 2016).  Here, Pressley has alleged

explicitly that MSTI violated the FMLA "willful[ly]."  SAC ¶¶ 123, 129.  Based on the standard

applicable at this stage of the proceedings, Pressley's claims under the FMLA must survive

MSTI's statute of limitations argument.  *See Murphy*, 390 F. Supp. 3d at 67 ("Because 'the

statute of limitations is an affirmative defense which a plaintiff is not required to negate in a

complaint,' courts should dismiss FMLA claims only if it is '<u>clear</u> that the three-year statute of

limitations for willful FMLA violations is inapplicable.' (quoting *Ramsey v. Advance Stores Co.,

Inc.*, No. 15-4854-RDR, 2015 WL 3948119, at *6 (D. Kan. June 29, 2015) (emphasis in

original))).

      Although MSTI initially argued that Pressley's claims under the DCFMLA are similarly

time-barred, *see* Def.'s Mot. to Dismiss at 30–31, it acknowledges that the case law it cited in

support of this argument has been abrogated, *see* Def.'s Reply at 18 n.3; *see also Murphy*, 390 F.

Supp. 3d at 68 ("Unlike the FMLA, [the one-year limitations period for claims under the

DCFMLA] is tolled while the claim is pending before the OHR, provided that the claim is

submitted to the OHR within one year of the underlying incident.").[10]  Thus, the Court turns to

the substance of Pressley's claims of interference and reprisal.  Because "[c]ourts interpret the

FMLA and DCFMLA similarly," they have applied the case law from FMLA suits to claims

made under the DCFMLA.  *Id.* at 67 n.5 (quoting *Alford v. Providence Hosp.*, 945 F. Supp. 2d

---

[10] Although the Court notes that Pressley does not appear to have included in the record
any evidence of the charges that he filed with OHR in support of his argument that the statute of
limitations should be tolled, "statute of limitations defenses often are based on contested facts"
and a court "should be cautious in granting a motion to dismiss on such grounds," such that
"'dismissal is appropriate only if the complaint on its face is conclusively time-barred.'"  *Rudder
v. Williams*, 47 F. Supp. 3d 47, 50 (D.D.C. 2014) (quoting *Firestone*, 76 F.3d at 1209).

98, 105 n.7 (D.D.C. 2013), *aff'd*, 561 F. App'x 13 (D.C. Cir. 2014)).  The Court does so here as well.

### 2.  Interference

In stating a claim of interference under the FMLA, "a plaintiff must allege facts sufficient to show, among other things, that (1) he was entitled to take leave because he had a 'serious health condition,' (2) he gave his employer adequate notice of his intention to take leave, and (3) his employer denied or otherwise interfered with his right to take leave."  *Hodges*, 959 F. Supp. 2d at 155; *see also Elzeneiny v. District of Columbia*, 195 F. Supp. 3d 207, 217 (D.D.C. 2016) (explaining that the D.C. Circuit has not articulated the elements of an FMLA interference claim, but setting forth a similar standard based on tests in other circuits); *Savignac v. Jones Day*, 486 F. Supp. 3d 14, 42 (D.D.C. 2020), *on recons. in part sub nom. Savignac v. Day*, 539 F. Supp. 3d 107 (D.D.C. 2021) ("To prevail on an FMLA [or DCFMLA] interference claim, a plaintiff must show (1) employer conduct that reasonably tends to interfere with, restrain, or deny the exercise of FMLA [or DCFMLA] rights, and (2) prejudice arising from the interference." (quoting *Waggel v. George Washington Univ.*, 957 F.3d 1364, 1376 (D.C. Cir. 2020)).

Pressley bases his claim of interference on the termination of his employment.  SAC ¶ 120.  As MSTI argues, see Def.'s Mot. to Dismiss at 33–34, "the FMLA does not 'protect an employee's job against a legitimate, unrelated, reason for separation.'"  *Thomas v. District of Columbia*, 227 F. Supp. 3d 88, 110 (D.D.C. 2016) (citation omitted); *see also Long v. Endocrine Soc'y*, 263 F. Supp. 3d 275, 288 (D.D.C. 2017) ("Although terminating a person's employment necessarily interferes with the person's rights under the statute, an employer is not liable for interference with FMLA rights if it can prove it would have fired the employee even if she had not taken leave.").  MSTI claims that it in fact did terminate Pressley for a legitimate, unrelated

reason—because he violated the FTC security policies.  Def.'s Mot. to Dismiss at 34.  For his part, Pressley has alleged that MSTI's proffered reason for termination was not legitimate at all, but was mere pretext for firing him because he sought leave.  According to Pressley, MSTI did not disseminate the FTC security policy that formed the basis of his termination until after his termination, nor did MSTI enforce the policy against another employee whose conduct would have similarly violated that policy.  SAC ¶¶ 66–75.  Moreover, MSTI terminated Pressley on December 13, 2019, *id.* ¶ 67, approximately one month after approving his leave under the FMLA and DCFMLA, *id.* ¶¶ 49, 52, and approximately two months after Pressley first sought leave, *id.* ¶ 42.  His factual allegations, taken as true for purposes of the motion to dismiss, plausibly support an inference of pretext.  *See Torzewski v. COSCO Shipping Lines N. Am. Inc.*, 414 F. Supp. 3d 1143, 1152 (N.D. Ill. 2019) (stating that the plaintiff's allegation that "his position was relocated as a pretext . . . and that he was ultimately fired when he refused to relocate" was "enough to sufficiently allege that [the defendant] interfered with his right to reinstatement"); *cf. Whitney v. Franklin Gen. Hosp.*, 995 F. Supp. 2d 917, 934 (N.D. Iowa 2014) (concluding that showing of pretext was "sufficient to *plead* the required causal connection" for FMLA discrimination claim (emphasis in original)).

Here, again, in consideration of the proper standard applicable at this early stage of the proceedings, the Court must conclude that Pressley has made a showing of pretext sufficient to adequately allege that MSTI interfered with his rights under the FMLA and DCFMLA and his claim is therefore sufficient to survive a motion to dismiss.  *See Tolston-Allen v. City of Chicago*, No. 12 CV 7601, 2014 WL 1202742, at *2–3 (N.D. Ill. Mar. 21, 2014) (deeming the plaintiff's allegations sufficient to "create a plausible inference of FMLA interference" because to survive a

motion to dismiss, "[s]pecific facts are not required" and "the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests").

### 3.  Retaliation

Finally, Pressley raises claims of FMLA and DCFMLA "reprisal"[11] by retaliating against him for seeking leave.  SAC ¶¶ 114–18, 125–30.  Again, MSTI responds that Pressley has not alleged sufficient facts to support a plausible causal connection between his seeking leave and the termination of his employment.

"The elements of a prima facie case of FMLA [and DCMLA] retaliation are the well-known triad: (1) the employee 'engaged in a protected activity under this statute'; (2) the employee 'was adversely affected by an employment decision'; and (3) 'the protected activity and the adverse employment action were causally connected.'"  *Gordon v. U.S. Capitol Police*, 778 F.3d 158, 161 (D.C. Cir. 2015) (quoting *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1368 (D.C. Cir. 2000)); *see also Chang*, 846 A.2d at 329 ("To establish a prima facie case of retaliatory termination under the DCFMLA, a plaintiff must demonstrate that: (1) [he] was engaged in a protected activity; (2) [his] employer took an adverse employment action; and (3) there was a causal connection between the two.").  As the D.C. Circuit has recognized, "[t]emporal proximity is often found sufficient to establish the requisite causal connection" for FMLA retaliation claims.  *Gleklen*, 199 F.3d at 1368 (finding inference of causal nexus where a "supervisor requested that [the plaintiff] return to work full time only a few weeks after she disclosed her pregnancy").  Likewise, the D.C. Court of Appeals has established that "close temporal proximity between a protected activity and an adverse employment action can

---

[11] The Court understands Pressley to be making claims of FMLA and DCFMLA "retaliation" and refers to the claims as such throughout this Opinion.

establish a causal connection between the two," including in cases of DCFMLA retaliation. *Chang*, 846 A.2d at 329.

Here, MSTI terminated Pressley approximately two months after Pressley sought leave under the FMLA and DCFMLA and one month after it approved that leave.  *See* SAC ¶¶ 42, 49, 52, 67.  The close proximity between Pressley's request for leave and MSTI's termination of his employment suffices here to permit an inference of a causal connection.  *See, e.g.*, *Miles v. Univ. of the Dist. of Columbia*, No. 12-cv-378, 2013 WL 5817657, at *12 (D.D.C. Oct. 30, 2013) (finding that the facts plausibly suggest causal connection due to temporal proximity where the plaintiff's leave began in April and her employment was terminated in June).  Thus, Pressley's claims of FMLA and DCFMLA retaliation also survive MSTI's motion to dismiss.

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss the First Amended Complaint (ECF No. 9) is **DENIED** as moot; Defendant's Motion to Strike the Second Amended Complaint (ECF No. 13) is **DENIED**; Plaintiff's Motion for Leave to File the Second Amended Complaint (ECF No. 14) is **GRANTED** *nunc pro tunc*; and Defendant's Motion to Dismiss the Second Amended Complaint (ECF No. 15) is **GRANTED IN PART AND DENIED IN PART**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  August 14, 2023                                      RUDOLPH CONTRERAS
                                                            United States District Judge